Olga Porochniak, Petitioner *v.* Workmen's Compensation Appeal Board (Container Corporation of America), Respondents.

Argued March 1, 1982, before President Judge Crumlish and Judges Rogers and Blatt, sitting as a panel of three.

*Marc S. Jacobs, Galfand, Berger, Senesky, Lurie and March,* for petitioner.

*M. Kelly Tillery, Obermayer, Rebmann, Maxwell & Hippel,* for respondent, Container Corporation of America.

OPINION BY JUDGE BLATT, July 9, 1982:

Olga Porochniak (claimant) appeals here from an order of the Workmen's Compensation Appeal Board (Board) which reversed a referee's grant of compensation benefits.

The claimant worked for the Container Corporation of America for approximately twenty-one years as a packer on an assembly line. On or about June 18, 1976, she injured her neck while stretching and twisting in the performance of her job of folding and lifting 50 pound cartons of boxes on a conveyor belt, whereupon she experienced both severe pain in her neck and difficulty in moving her right arm. Although in pain, she managed to finish her shift and to work the following day, after which she informed her employer that, due to the severity of her pain, she was no longer able to work. Following surgery on her neck, she returned to work on December 1, 1976 and continued in her job until April 15, 1977, at which time she again became disabled as a result of her neck injury and she has remained disabled.

The referee found, *inter alia,* that:

6. Claimant then saw her family doctor, who referred her to Dr. Gregory Lignelli, a board certified neurosurgeon, who immediately hospitalized her in the Pottstown Memorial Medical Center and performed surgery on the right side of her neck.

7. It was Dr. Lignelli's opinion, which the Referee accepts, that the Claimant's work activity aggravated pre-existing degenerative changes in her neck, his exact diagnosis was "cervical spondylosis and midline spur, C-4, C-5, et cetera." These conditions were aggravated to the point where she could no longer perform her job, either before or after surgery.

The referee then concluded that the claimant had established by competent evidence that she had sustained a work-related injury which had resulted in periods of total disability from June 18, 1976 through November 30, 1976 and from April 16, 1977 into the future. The Board, however, concluded on appeal that the medical evidence upon which the referee had relied was equivocal and, therefore, incompetent, and reversed. It is from this order of the Board that the claimant appeals here.

Where, as here, the party with the burden of proof prevailed before the referee and the Board took no additional evidence, our scope of review is limited to determining whether or not constitutional rights were violated, an error of law was committed, or a necessary finding of fact was unsupported by substantial evidence. *American Refrigerator Equipment Company v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977). The party who prevailed below is, of course, entitled to the benefit of the most favorable inferences to be drawn from the evidence. *American Refrigerator.*

Under Section 301(c) of The Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411(1), an injury

shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury. . . .

A claimant is, therefore, entitled to compensation for an injury attributable to *aggravation* of a pre-existing condition upon his showing that he suffered a disabling injury in the course of and related to his employment. *Cooper-Jarrett, Inc. v. Workmen's Com-*

*pensation Appeal Board,* 55 Pa. Commonwealth Ct. 204, 423 A.2d 52 (1980).

The claimant's physician, a board-certified neurosurgeon, was asked if he was able to state an opinion based upon a reasonable degree of medical certainty as to whether or not her work activity in any way caused or aggravated the condition for which he had treated her. He replied:

> That's always hard to say because it's a combination of a degenerative problem and I think that you could say with fair certainty that many years of this kind of work very much could contribute to her symptoms and her disease. I think that it certainly tended to precipitate her complaints in June.

On cross-examination he testified:

> Q   Would this incident that she claimed about at work when she twisted her neck cause the degenerative change?

> A   I don't think it would cause the degenerative change. *I think it would aggravate the degenerative change.* In other words, a single incident of twisting. Now, it's possible that repeated twisting at work, it's possible that repeated movement, repetitive movement of the neck or shoulder, repeatedly over the years could have caused it.

> Q   Can you state that with any amount of reasonable medical certainty?

> A   No—Yeah, I could and I couldn't. I could be challenged by people who would say, well, you have no real proof of that, doctor. Others would stand and say that's what it actually is. I don't think I could stand in front of a classroom or in front of a Judge and say that that's exactly

what caused degenerative change movement. On the other hand, we know that areas of stress, joints that undergo repeated stress, undergo degenerative change. So, I can't tell you how much, how long, how many years it takes, but it probably does. (Emphasis added.)

When the employer's medical witness was asked if the claimant's job, which involved the repetitive picking up and lifting of cartons weighing about 50 pounds, twisting of the neck and upper torso accompanied by movement of the shoulder and arms eight hours a day for 22 years, would aggravate her degenerative arthritic condition, he replied, *inter alia:*

A She has a degenerative process in her neck involving the vertebral bodies, as well as the discs. This entire process that we are discussing is a natural process of aging. We all develop this if we live long enough. Some people get it sooner than others. A man who works out in the street and runs a jackhammer to cut the street, he may have it sooner than a person that does more sedentary work. If he got degenerative arthritis of the elbows because of the jackhammer it would be because of the abuse over and over in the joint. A stonemason will get it in the low back, and a truck driver will get it in the low back.

So, degenerative arthritis is just a natural degenerative aging process. Now, you can hasten that by use and abuse of a part. The most simple way to hasten arthritis of the neck is to have an injury and that this person not even be aware of it. . . .

When you asked me whether her job produced it or not, that doesn't seem likely. I would say ordinarily, no, but if the woman already has

it then I think the job could make it hurt a little bit more, yes.

I don't think moving cartons around twenty years would, by itself, cause the arthritis because it is not that strenuous to start with.

Q Doctor, that was not the question. That was not the question as to whether or not it did produce this condition. I was very careful in the wording of my question. I want to pick up on your own analogy?

A *You asked me would it aggravate it? Yes.*

Q The jackhammer could aggravate an arthritic condition that a man was developing, that is a natural process?

A Yes.

Q And that analogy holds?

A Yes. (Emphasis added.)

The claimant testified as to the occurrence of the injury:

Well, when I was working on the machine, packing them cartons, soap cartons, and the machine was running too fast, and when I kept turning around every second—you can't miss nothing, no second—and I was in a hurry to try to keep up with the machine, when I turned around I hurt something in my neck, and I shut the machine off.

The operator came up to me and he said, what is the matter? I said, I just can't do it—I am hurting.

Where no obvious causal connection exists between a claimant's injury and the alleged cause thereof, he must establish the relationship by means of unequivocal medical testimony, not based on mere possibilities. *Westmoreland Casualty Company v. Workmen's*

*Compensation Appeal Board,* 36 Pa. Commonwealth Ct. 307, 387 A.2d 683 (1978). However, "the absence of explicit testimony linking the injury to the disability will not preclude recovery where a referee who personally heard the medical evidence has determined that the requisite causation was present and the record as a whole supports the determination." *Stone Container Corp. v. Workmen's Compensation Appeal Board,* 50 Pa. Commonwealth Ct. 384, 387, 413 A.2d 17, 19 (1980).

The claimant here testified that when she turned around while in the course of her work on the conveyor belt, she hurt something in her neck and that she experienced great difficulty working the remainder of her shift that day because of the ongoing severe pain in her neck and her inability to use her right arm normally. The testimony of the claimant's medical witness, upon which the referee relied, as well as that of the employer's medical witness, support the referee's finding that the claimant's work activity *aggravated* a pre-existing degenerative change in her neck.[1]

We believe, therefore, that the referee did not err in then finding that the claimant was totally disabled by a work-related injury sustained in an aggravation of a pre-existing condition and we will therefore reverse the Board and reinstate the referee's order.

## ORDER

AND Now, this 9th day of July, 1982, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is reversed.

---

[1] While neither the claimant nor the employer's medical witness offered unequivocal medical testimony to the effect that the claimant's degenerative arthritic condition was caused by her employment, both unequivocally testified that her work activity *aggravated* her pre-existing condition and such testimony is sufficient to establish the existence of a compensable injury within the meaning of the Act.

AND IT IS FURTHER ORDERED that judgment be entered in favor of the claimant, Olga Porochniak, and against Container Corporation of America and/or its insurance carrier in the amount of $137.56 per week, together with interest at the rate of ten percent (10%), in accordance with the Workmen's Compensation Act for the periods of June 18, 1976 up to and including November 30, 1976, and from April 16, 1977, to date and continuing until her disability shall cease or otherwise change.

Container Corporation of America and/or its insurance carrier is directed to reimburse claimant's counsel for the following costs:

| | |
|---|---|
| Dr. Gregory Lignelli—Report | $ 75.00 |
| Deposition Fee | 300.00 |
| Court Reporter—Dr. Lignelli | 45.35 |
| —Dr. Sbarbara | 31.00 |
| Hospital Records — Pottstown Mem. Medical Center | 21.00 |
| | $472.35 |

The Container Corporation of America and/or its insurance carrier is directed to pay twenty percent (20%) of all compensation awarded to the claimant directly to the claimant's attorney out of the claimant's award and to pay the balance thereof directly to the claimant.

Judge MENCER did not participate in the decision in this case.